George B. WASHINGTON, Appellant,

v.

Emerson GOOD, Appellee.

No. 5898.

United States Court of Appeals Tenth Circuit.

Oct. 15, 1958.

Louis Wagner, Kansas City, Mo. (Robert W. Berrey, Kansas City, Mo., on the brief), for appellant.

Leonard O. Thomas, Kansas City, Kan. (Richard Millsap, Kansas City, Kan., on the brief), for appellee.

Before BRATTON, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.

PHILLIPS, Circuit Judge.

Washington brought an action against Good to recover damages for injuries resulting from a collision between a Chevrolet truck being operated by Good and an automobile being operated by Norma Marie Cash and in which Washington was a passenger. The case was tried to the court without a jury. From a judgment in favor of Good, Washington has appealed.

The evidence reflects these facts: Washington was employed as a bell captain at the Hotel Kansas Citian, in Kansas City, Missouri. At 2 a. m. on August 23, 1955, he concluded his day's duties at the hotel and decided to visit the Penrod Club, in Wyandotte County, Kansas. Cash learned that Washington desired to go to the Penrod Club and offered to transport him there in her automobile. Washington and Cash left the hotel about 2:15 a. m. and drove west on Highway 40. They inadvertently drove beyond the turnoff from Highway 40 to the Penrod Club. Washington told Cash he thought they had gone too far and he then, at her suggestion, got out and examined markers. Having determined that they had gone too far, he returned to the Cash automobile and told Cash to turn around. Cash made a left-hand U turn across the highway at a point beyond such turnoff and not at an intersection. At the place where Cash made such U turn, Highway 40 is a four-lane highway, with two lanes for eastbound traffic and two lanes for westbound traffic separated by a medial strip approximately four feet wide.

At about 4 a. m. of the same day, Good was driving his 1948 Chevrolet one and one-half ton truck loaded with eight cattle in an easterly direction on Highway 40. He came over the crest of a hill at a speed of about 45 miles per hour and approached the Cash automobile, which was either stopped or because of carburetor trouble was moving very slowly in the middle of the two eastbound lanes.

The front parking lights on the Cash automobile were lighted, but neither the headlights nor the rear lights were on. Good observed an object on the highway, but was unable to determine what it was. When he was within a distance of approximately 160 feet he first realized it was an automobile. He applied his brakes immediately, believing at the time that the Cash automobile would move forward or out of his line of traffic. His truck, including the brakes, was in good mechanical condition. When he applied his brakes the cattle shifted forward and interfered with the tracking of the wheels of the truck. About that time he concluded that the Cash automobile was stalled on the highway. He then decided it would be better to attempt to pass the Cash automobile on the left side of the highway, and attempted so to do. At about the same time another automobile was approaching from the east traveling west. In endeavoring to pass between the two automobiles, Good's right front wheel and right front fender struck the Cash automobile.

The westbound automobile was driven by a Mrs. Allen. As she approached the other two automobiles she pulled over to the right to give Good more room to pass between her automobile and the Cash automobile. She testified that the headlights were not lighted on the Cash automobile, but that the front parking lights were lighted. As a result of the collision, Washington was thrown from the Cash automobile and he suffered serious injuries.

Under the undisputed evidence the Cash automobile was either stopped or moving very slowly in the middle of the two eastbound lanes, that is, it was positioned partly in one and partly in the other of the eastbound lanes, with no rear lights lighted so as to warn approaching travelers and only the parking lights on in front.

The trial court found that Good was driving his truck at approximately 40 miles per hour; that the truck was under proper control and was mechanically in proper operating condition; and that the collision was caused solely by Cash in operating her vehicle without proper lights and in either stopping or driving

it very slowly in the middle of the two eastbound lanes.

The primary contention of Washington is that Good was guilty of negligence as a matter of law, in that he failed to operate his truck at such a speed as to enable him to stop or pass another automobile within the actual range of his vision.

■ While there are certain conditions under which such rule as to negligence applies,[1] there are also conditions under which it has been held that the case presents an issue of fact. In Hayden v. Jack Cooper Transport Co., 134 Kan. 172, 5 P.2d 837, Syllabus 1 by the court reads:

> "The rule that one driving an automobile in the nighttime must so operate his car that he may stop it within the range of vision of his headlights is applicable in cases where vehicles or other objects on the highway may be seen by the aid of proper lights; but where an obstruction was of such a character and so placed that a motorist driving his car properly equipped with lights and brakes, at a moderate speed, is unable to see an obstruction in time to prevent colliding with it, and is otherwise free from negligence, he cannot be held guilty of contributory negligence as a matter of law."

In Towell v. Staley, 161 Kan. 127, 166 P.2d 699, 703, the Supreme Court of Kansas quoted from McCoy v. Pittsburg Boiler & Machine Co., 124 Kan. 414, 417, 261 P. 30, as follows:

> "The plaintiffs in proceeding along the highway had a right to believe that it was safe and that there were no hidden, undisclosed defects such as an unlighted truck standing in the path of travel."[2]

■ Here, the Cash automobile was either stopped or moving at a very slow speed in the middle of the two eastbound lanes. No warning lights on the rear of the Cash automobile were lighted. Good had a right to believe that there would be no unlighted automobiles stopped or moving very slowly in the middle of the two eastbound lanes. Had the tail lights and warning lights of the Cash automobile been lighted Good would undoubtedly have seen it and realized it was an automobile long before he did. Under the existing facts and circumstances, the court was warranted in concluding that Good was not guilty of negligence, as it in effect found.

■ Moreover, when Good came over the crest of the hill and unexpectedly came upon the unlighted Cash automobile stopped or moving very solwly in the middle of the two eastbound lanes of the highway and his load shifted, and the wheels of the truck did not properly track, he was confronted with a sudden emergency. It is a well-settled rule that when the operator of a motor vehicle is confronted with a sudden emergency not of his own making, he is not held to the same accuracy of judgment as would be required of him if he had time for deliberation, and if he exercises such care as an ordinarily prudent man would exercise, when confronted by a like emergency, he is not liable for an injury which results from his conduct.[3]

In Metzinger v. Subera, 175 Kan. 542, 266 P.2d 287, 291, the Supreme Court of Kansas said:

> "And, entirely aside from what has just been said, and conceding, *solely for the sake of argument,* that defendant could have applied his brakes sooner, and had he done so could have avoided striking the child, it has long, if not always, been the rule in this state and elsewhere that

1. Haines v. Carroll, 126 Kan. 408, 267 P. 986; Rhoades v. Atchison, T. & S. F. Railway Co., 121 Kan. 324, 246 P. 994; Robinson v. Short, 148 Kan. 134, 79 P.2d 903.

2. See, also, Winfough v. Tri-State Insurance Co., 179 Kan. 525, 297 P.2d 159.

3. Metzinger v. Subera, 175 Kan. 542, 266 P.2d 287; Winfough v. Tri-State Insurance Co., 179 Kan. 525, 297 P.2d 159.

one, who, in a sudden emergency, acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence. One so confronted is not held to the same accuracy of judgment as would be required of him if he had time for deliberation, and if he exercises such care as an ordinarily prudent man would exercise when confronted by a like emergency he is not liable for an injury which has resulted from his conduct."

The trial court was warranted in finding that Good was confronted with a sudden emergency created by Cash and that he exercised such care as an ordinarily prudent man would have exercised when confronted by a like emergency.

The judgment is affirmed.